**SIGNED.**

Dated: November 24, 2008



_____
**JAMES M. MARLAR
U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| CARDSYSTEMS SOLUTIONS, INC., | No. 4:06-bk-00515-JMM |
| Debtor. | Adversary No. 4:07-ap-00046-JMM |
| MERRICK BANK CORPORATION, | |
| Plaintiff, | **MEMORANDUM DECISION** |
| vs. | **(Regarding all remaining motions for** |
| CARDSYSTEMS SOLUTIONS, INC., | **summary judgment, both of the Trustee, and** |
| Defendant. | **Merrick Bank Corporation)** |
| BETH LANG, AS CHAPTER 7 TRUSTEE FOR CARDSYSTEMS SOLUTIONS, INC., a Delaware corporation, | |
| Counterclaimant, | |
| vs. | |
| MERRICK BANK CORPORATION, | |
| Counterdefendant. | |

Before the court are:

1.    Merrick Bank Corporation's ("Merrick") Motion for Summary Judgment (Dkt. #79), and

2. The Trustee's Motion for Partial Summary Judgment regarding an alleged preferential payment of approximately $1.2 million (Dkt. #77).

These motions address, in part, the Trustee's remaining summary judgment motion, and also Merrick's request for a merits ruling on all other remaining issues.

**COMPLAINT AND COUNTERCLAIM**

**A.  Complaint**

To understand the case, procedurally, it is helpful to review the underlying issues. Merrick began the process by filing a complaint designed to answer the legal questions of how and to whom escrowed funds and stock should be paid or delivered. In addition, Merrick sought a declaration that it was entitled to retain an earlier payment of approximately $1.2 million.

**B.  Counterclaim**

The Trustee answered Merrick's complaint, denied that Merrick was entitled to any of the funds or stock currently in escrow, and also asked that Merrick return to the estate the approximate $1.2 million which it received within 90 days of the Debtor's filing for voluntary chapter 11 relief.

The Trustee also raised a number of affirmative defenses to Merrick's complaint.

The Trustee then filed a counterclaim against Merrick, asserting generally that Merrick either did not fully or properly comply with the established processes governing losses, loss mitigation or establishment of damages to justify release of the escrowed funds or stock; that Merrick's asserted indemnification rights against CardSystems was too cavalierly claimed (breach of good faith and fair dealing); breach of contract; "insider" preference; and 90-day creditor preference.

# DISCOVERY

Over the past several months, the parties have conducted discovery, and have narrowed the issues, which have now crystalized in the form of their respective summary judgments. A trial is set to start, if necessary, on December 3, 2008.

# FOCUSING ON THE LEGAL ISSUES

In its essence, as to the currently escrowed money and stock, the legal issue is whether they constitute "property of the estate," or whether they had been sufficiently removed therefrom so that, now, only Merrick should be the beneficiary thereof.

As for the $1.2 million paid to Merrick within 90 days preceding CardSystem's voluntary chapter 11 filing, the primary issue now appears to be whether the "transfer" for preference purposes was made within or outside of the 90 day pre-petition period.

Also, the Trustee continues to maintain that Merrick was an "insider" of the Debtor, thus exposing to preference recovery the entire escrow and the property or money with which it was funded.

**A.      Issues that no longer appear to be in dispute**

All of the material commercial facts are not in dispute. These are that CardSystems suffered an internal security breach of sensitive Visa and MasterCard information. This breach was due entirely to errors or omissions created and caused by CardSystems. As a result, CardSystems' sponsoring bank, Merrick, was exposed to losses which it was required to pay to both Visa and MasterCard.[1] In turn, Merrick then sought indemnification or reimbursement from CardSystems.

---

[1] Merrick may also be subject to claims of loss paid out by Cumis Insurance. That dispute is being debated in a non-bankruptcy forum.

CardSystems then sold its business to "PayByTouch,"[2] which asked Merrick to sponsor it. Merrick agreed only if an escrow could be set up, funded by part of CardSystems' expected profit, to cover all or a part of Merrick's anticipated losses.

Merrick has consistently claimed that its losses are, or will exceed, the amounts on deposit in the various escrows, or paid to it. The amounts at issue here are:

| | |
|---|---|
| $4,653,753.71 | JP Morgan escrow account |
| 1,216,195.00 | Previously paid |
| 446,246.29 | JP Morgan escrow account |
| 3,500,000.00 | PayByTouch stock[3] |
| $9,816,195.00 | TOTAL |

On p. 12 of its Motion for Summary Judgment Merrick states that the cash currently in the escrow account totals $5,630,051.29.

As for Merrick's claimed losses, it has amplified upon how such amounts were liquidated in its undisputed facts. The Trustee has not substantially opposed these claims of loss, with a sufficient factual showing requiring a trial. Thus, there is nothing left to try with regard to whether Merrick suffered a loss, due to CardSystems' security breach.[4]

Merrick has proven that it has sustained losses, due to the security breach of CardSystems, of an amount in excess of $6,316,195, the total of the cash either on deposit and in escrow, or previously paid. It is unnecessary to discuss here whether Merrick has suffered an additional $3.5 million in losses, represented by the PayByTouch stock, unless any party here contends that such stock has any value. If PayByTouch is in a chapter 7 bankruptcy proceeding

---

[2] PayByTouch is currently in a chapter 7 proceeding in the Central District of California, Case No. 2-07-bk-20027-TD. The stock is probably worthless, and no party has contended otherwise.

[3] *See* fn. 2. This stock is worthless.

[4] In addition, Merrick filed an amended Proof of Claim for $16,427,814 (Claim No. 177-2). And Merrick has actually paid $12,271.264.06 to Visa and MasterCard.

4

which has the possibility that it will eventually render a surplus, then the parties should quickly surface that issue. For now, it is probably an accurate assessment that the stock is worth nothing.

The Trustee argues that Merrick suffered only $2 million in losses. (Trustee's factual statement No. 62.) However, her only witness for that "fact" was not even a Merrick employee, but a principal of PayByTouch. As such, the "testimony" is either hearsay or without an adequate foundation, and is only speculative at best. It does not raise a triable issue of fact.

Therefore, no credible evidence exists to establish that Merrick's claim is possibly less than the sums (and property) on deposit in the escrow account, or previously paid to it.

**B.      Was Merrick an "insider" of CardSystems?**

From a review of the undisputed evidence submitted, this court finds and concludes, as matter of law, that Merrick was not an "insider" of the Debtor. Simply because, as CardSystems' major creditor, it was able to exert some influence, does not rise to the level of a "control" relationship. The disputed facts do not raise a genuine issue of material fact on this point. Summary judgment on this issue will be granted in favor of Merrick.

**C.      Did Merrick act reasonably, and in compliance with established procedures in how it dealt with Visa, MasterCard and the Debtor in the face of CardSystems' security breach?**

From a review of the undisputed facts, the court finds and concludes, as a matter of law, that Merrick acted reasonably and responsibly in how it reacted to the adverse developments associated with CardSystems' security breach. In addition, the manner by which Merrick attempted to ultimately collect upon its losses, by insisting upon the establishment of the earmarked escrow accounts, was consistent with reasonable business practices, in hopes of recovering some of its

5

Case 4:07-ap-00046-JMM    Doc 110    Filed 11/24/08    Entered 11/24/08 21:51:04    Desc
Main Document    Page 5 of 9

anticipated losses. Simply because Merrick was legally astute in providing for the escrow (and its ultimate payment) does not make the escrow transaction illegal, surreptitious or assailable, at this late date, by the CardSystems' Trustee.

The court further finds, on the undisputed record of events before it, that there was no impropriety in Merrick's so doing, no breach of contract by Merrick, and no breach of any duty of fair dealing and good faith by Merrick.

**D.** **Was the establishment of the escrow account (and any later payments therefrom), a "transfer" of the kind making the fund (or any payment) recoverable for the benefit of the estate?**

The only meaningful legal issues remaining in this case, then, are ones that have been evident and vetted from at least the confirmation hearing of September 13, 2007. Those issues are:

- Is the JP Morgan escrow account, established and funded outside of the 90 day period preceding bankruptcy, "property of the estate" under 11 U.S.C. § 541(a)? And
- Is a payment made from such escrow account, to a creditor-beneficiary thereof, within 90 days of filing, a preferential transfer pursuant to 11 U.S.C. § 547?

**1.** **Establishment of the escrow account**

Property rights are defined by state law. *Butner v. United States,* 440 U.S. 48 (1979).

Merrick argues that, pursuant to New York state law and cited authorities, that once an escrow is set up for specified purposes, the grantor (here, the Debtor) retains only a contingent right to any surplus after the claims of the beneficiary (here, Merrick) are finally liquidated. The court agrees. The Trustee's efforts to distinguish the authorities cited by Merrick are unconvincing.

Because the "transfer" of the Debtor's property (deposited money and stock), i.e., creation of the escrow account, occurred outside of the 90-day period preceding the CardSystems' bankruptcy, such property was no longer "property of the estate" under 11 U.S.C. § 541(a), except in the event that it took less than the deposited amounts to fully pay Merrick. In such event, any residue would revert to CardSystems, and now, the CardSystems' estate.

The Trustee dismisses, too easily, a critical point. It is that, but for Merrick's agreement to continue its sponsorship to PayByTouch, the sale would not have occurred, and there would have been no escrow account to litigate over. The escrow agreement was the *quid pro quo* for Merrick's future sponsorship of PayByTouch. The future sponsorship was the consideration for PayByTouch to agree to pay $47 million in cash or assets to CardSystems. Looking at the issue in this way means that Merrick, not CardSystems, had the greater interest in the escrow fund's ultimate distribution. For Merrick, like the story of the tar baby in Joel Chandler Harris' *Uncle Remus* stories *(JOEL CHANDLER HARRIS, UNCLE REMUS, HIS SONGS AND HIS SAYINGS, THE FOLK-LORE OF THE OLD PLANTATION,* D. Appleton and Company (1880)), it had to keep digging itself deeper in order to extract a positive solution. In so doing, it now finds itself having not one, but four risks: first, when it sponsored CardSystems, which unilaterally caused a systemwide security failure; second, when in spite of known losses, Merrick agreed to sponsor CardSystems' buyer in order to recoup from the losses caused by CardSystems; third, now suffering an inevitable loss by PayByTouch's chapter 7 filing, and dealing with holding $3.5 million of worthless stock; and fourth, it must face the final consequence--the uncertainty and cost of this litigation.

**2. No preference within 90 days**

Because there had been no "transfer" of the <u>Debtor's</u> property to Merrick within 90 days of the bankruptcy filing, there was no preferential payment to Merrick which may be recovered for the estate. A trustee in bankruptcy must prove all elements of a voidable and preferential transfer in order to prevail. Here, the Trustee cannot prove that a "transfer" of the "Debtor's

1 property" occurred within 90 days prior to bankruptcy. The "transfer" had occurred outside that
2 short window, when the escrow account was set up and funded. It is now beyond the Trustee's
3 reach.

## CONCLUSION

7 Merrick is entitled to summary judgment on each of the claims set forth in its
8 complaint. The Trustee's remaining motion for summary judgment on the preference issue is denied.
9 The parties should notify the court if its rulings have left remaining any triable issue
10 or issues. If not, the trial dates currently set shall be vacated, as unnecessary, and the parties shall
11 offer such additional submissions as required in order to finally conclude this matter.
12 If no further issues remain for resolution, Merrick shall lodge a form of judgment
13 within 15 days. The Trustee shall have 10 days within which to object thereto. If an objection is
14 made, the court will attempt to rule on the papers alone, but if it cannot easily do so, it will set a
15 hearing thereon.

17 DATED AND SIGNED ABOVE.



COPIES served as indicated below
on the date signed above:

Susan G Boswell
Quarles & Brady
One South Church Ave., Suite 1700
Tucson, AZ 85701-1621                    Email: sboswell@quarles.com

Timothy T. Brock and Daniel G Gurfein
Satterlee Stephens Burke & Burke
230 Park Avenue                          Email: dgurfein@ssbb.com
New York, NY 10169                       Email: tbrock@ssbb.com

Ryan W. Anderson and Stephen J. Womack
Guttilla Murphy Anderson
4150 W. Northern Ave.                    Email: swomack@gamlaw.com
Phoenix, AZ 85051                        Email: randerson@gamlaw.com

Trudy A. Nowak
Anderson & Nowak
2211 E. Highland Ave., Suite 211
Phoenix, AZ 85016                        Email: tan@anlawfirm.com

Lowell E. Rothschild, Michael McGrath,
Scott Gan, and Fred Peterson
Mesch, Clark & Rothschild
259 N. Meyer Ave.
Tucson, AZ 85701                         Email: ecfbk@mcrazlaw.com

Beth E. Lang, Trustee
1955 W. Grant Rd., Suite 125
Tucson, AZ 85745                         Email bethelang@earthlink.net

Larry Lee Watson
Office of the U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706                   Email larry.watson@usdoj.gov


By  /s/ M. B. Thompson
    Judicial Assistant